1

**UNITED STATES DISTRICT COURT**

2

**DISTRICT OF NEVADA**

3
Boyd Gaming Corporation,                     )
                                             )
4                              Plaintiff,     )      Case No.: 2:13-cv-00981-GMN-CWH
                                             )
5          vs.                               )
                                             )              **ORDER**
6    B Hotel Group, LLC,                     )
                                             )
7                              Defendant.     )
                                             )
8    _____)

9          Pending before the Court is the Motion for Preliminary Injunction (ECF No. 27) filed by

10   Plaintiff Boyd Gaming Corporation ("Boyd Gaming"), to which Defendant B Hotel Group,

11   LLC ("B Hotel Group") has filed a Response (ECF No. 35), Plaintiff has filed a Reply (ECF

12   No. 44), and Defendant has filed a Sur-Reply (ECF No. 50).  The Court also conducted a

13   hearing on February 27, 2014. (Mins. of Proceedings, ECF No. 37.)

14   **I.    BACKGROUND**

15         Plaintiff filed its Complaint before this Court on June 4, 2013, alleging causes of action

16   against Defendant "for trademark infringement, unfair competition and trademark dilution

17   under federal statutes, with pendent state and common law claims for trademark infringement

18   and dilution." (Compl., 2:26-27 – 2:1, ECF No. 1.)  Plaintiff alleges that it owns the exclusive

19   rights to trademarks related to its operation of hotel casino entertainment companies located

20   throughout the United States, and that Defendant has infringed upon these rights and Plaintiff's

21   "BOYD" brand in violation of federal and state law. (*Id*. at 2-3.)  Plaintiff served Defendant

22   with the Summons and Complaint on June 6, 2013. (Aff. of Service, ECF No. 6.)

23         Plaintiff alleges that it began using its B CONNECTED trademark nationwide in 2008,

24   and later adopted additional "B-formative" trademarks that "utilize the verb 'be' substituted as

25   a single letter B (representing BOYD) in connection with a term that is suggestive of Boyd's

Services." (*Id*. at 3:¶¶11-14.)  Plaintiff describes these marks as its "B Marks," which include: B CONNECTED; B RELAXED; B ENTERTAINED; B REWARDED; B SATISFIED; and B RECOGNIZED. (*Id*. at 3:¶13.)  For these B Marks, Plaintiff has nineteen trademark registrations with the United States Patent Office ("USPTO"). (*Id*. at 4-6:¶18.)  Plaintiff also has three Nevada registrations for B CONNECTED, B RELAXED, and B RECOGNIZED. (*Id*. at 6:¶19.)

Plaintiff also has a trademark registration with the USPTO for its QUENCH Mark. (*Id*. at 6-7:¶¶20-21.)  Collectively, Plaintiff describes the QUENCH Mark and the B Marks as its "Boyd Marks." (*Id*. at 7:¶21.)

In mid-2010, Defendant filed "intent-to-use" trademark applications with the USPTO for several marks in relation to hotel and resort lodging and services, including: B PAMPERED; B SOCIAL; and B HAPPY. (*Id*. at 8-9:¶31.)  In July 2010, the USPTO issued notices of its refusal to register these three marks based on a likelihood of consumer confusion with several of Plaintiff's B Marks. (*Id*. at 9:¶32.)  Plaintiff describes these three marks as the "Refused Marks." (*Id*. at 9:¶31.)

Plaintiff alleges that in January 2011 Defendant opened its "B Ocean Resort" in Florida. (*Id*. at 7-8:¶30.)

As alleged in the Complaint, even after receiving notice from the USPTO of Plaintiff's similar marks and of the likelihood that the marks would create confusion among consumers, Defendant nevertheless continued to prosecute its applications for ten other marks, which Plaintiff describes as the "Prosecuted Infringing Marks":  B HAPPY; B WIRED; B OUR GUEST; B MINE; B IN TOWN; B IN THE CITY; B CAPITAL; B ON THE BEACH; B MAGIC; and B DOWNTOWN. (*Id*. at 10-13:¶39.)

Plaintiff alleges that Defendant continues to create and use multiple marks that are similar in the same way, even after receiving written notice of Plaintiff's rights in the B Marks,

including eleven "New Infringing Marks" for which Defendant has submitted USPTO applications: B VEGAS; B INDULGED (two); B NOURISHED; B IN TOUCH; B SCENE; B ACTIVE; B INTERACTIVE; B WED; B GREEN; and B CHIC. (*Id*. at ¶40.)

Plaintiff also alleges that Defendant has adopted and uses two marks that are identical to Plaintiff's B RELAXED Mark and Plaintiff's QUENCH Mark, described as the "Identical Marks." (*Id*. at 16-17:¶43.)

Plaintiff alleges that Defendant has also adopted the following B-formative marks, described as "Common Law Infringing Marks":

| | | |
|---|---|---|
| a) B RELAXED; | q) B SOCIAL; | gg) B SMASHED;, |
| b) B REFRESHED; | r) B SWEET; | hh) B TUSCAN; |
| c) B RENEWED; | s) B DAZZLED; | ii) B SENSITIVE; |
| d) B RESTED; | t) B EXTRAVAGANT; | jj) B HUMANE; |
| e) B TREATED; | u) B WED IN THE | kk) B INFATUATED; |
| f) B ON TOP; | AFTERNOON; | ll) B CELEBRATED; |
| g) B EMBELLISHED; | v) B WED BRUNCH; | mm) B APPRECIATED; |
| h) B TOGETHER; | w) B WED AT THE OCEAN; | nn) B CRUISIN'; |
| i) B HYDRATED; | x) B DAZZLED; | oo) B READY; |
| j) 2 B ON THE MOVE; | y) B HOT; | pp) B CULTURED; |
| k) B IN THE KNOW; | z) B CARVED; | qq) B AMAZED; |
| l) B PRODUCTIVE, FIT AND | aa) B MEXICANO; | rr) B ARTISTIC; |
| SASSY; | bb) B ITALIAN; | ss) B MESMERIZED; |
| m) B MITSVA'D; | cc) B ASIAN; | tt) B SUN-KISSED. |
| n) B ADVENTUROUS; | dd) B ITALIAN; | |
| o) B IN THE NEWS; | ee) B ANDALUSIAN; | |
| p) B THE FIRST TO KNOW; | ff) B CUBANO; | |

(*Id*. at 17-18:¶44.)

Collectively, Plaintiff refers to these Common Law Infringing Marks, the Refused Marks, the Prosecuted Infringing Marks, the New Infringing Marks, and the Identical Marks as the "Infringing Marks." (*Id*. at 18:¶44.)

Plaintiff alleges that it "became aware of Defendant's activities in 2012 and immediately began taking actions to enforce its rights against Defendant," including initiating two proceedings before the Trademarks Trial and Appeal Board ("TTAB") opposing Defendant's

applications for B INTERACTIVE and B CHIC. (*Id*. at 19-20:¶¶46, 52-53.)  Plaintiff filed the instant lawsuit on June 4, 2013, and on June 6, 2013, Plaintiff served Defendant with the Summons and Complaint. (Aff. of Service, ECF No. 6.)

Plaintiff alleges three claims against Defendant under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a)(1)(A), (c), for trademark infringement and dilution and for unfair competition – false designation of origin. (*Id*. at 20-22.)  Plaintiff also alleges two claims under Nevada statute, Nev. Rev. Stat. §§ 600.420, 600.435, for trademark infringement and dilution. (*Id*. at 22-24.)  Finally, Plaintiff alleges common law trademark infringement. (*Id*. at 24.)

As its sixth claim for relief pursuant to 15 U.S.C. §§ 1119, 1063(a), and 1064, Plaintiff "seeks determinations from the Court that Defendant's registrations obtained for its Infringing Marks shall be cancelled," and "to otherwise rectify the register such that Defendant's applications for its Infringing Marks do not proceed to registration." (*Id*. at 24:¶¶95-96.)

Included in its Prayer for Relief, Plaintiff requests:

A preliminary and permanent injunction prohibiting Defendant, Defendant's respective officers, agents, servants, employees and/or all persons acting in concert or participation with Defendant, from:

1) using the Infringing Marks, confusingly similar variations thereof or any other marks that infringe or dilute the Boyd Marks, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any purpose whatsoever (including, but not limited to, on websites, in domain names, in hidden text and metatags); and

2) using, maintaining an existing registration, registering or attempting to register any B-formative mark in which the verb "be" is substituted as a single letter B in connection with a term that is suggestive of Defendant's services.

(*Id*. at 25:3-15.)

In response to the Complaint (ECF No. 1), Defendant filed a timely Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 8) which the Court denied (Order, Feb. 18, 2014, ECF No. 33).  Attached to the parties' briefing on the motion were the following exhibits: the

1   Declaration (ECF No. 8-1) of Defendant's CEO, Ayelet Weinstein; copies of Plaintiff's

2   trademark registrations (pages 21-26 of ECF No. 10); and Defendant's chart of its trademark

3   applications with a screenshot of its use of the QUENCH mark (ECF Nos. 11-1, 11-2).

4         Briefing had concluded for the Motion to Dismiss by the time Plaintiff filed the instant

5   Motion for Preliminary Injunction (ECF No. 27).  In its motion, Plaintiff alleges that Defendant

6   has adopted more infringing marks since this litigation began, including at least eleven new B-

7   formative marks described by Plaintiff as "Post-Litigation Infringing Marks," and that

8   Defendant has also announced plans to expand. (*Id*. at 11-12; *see also id.* at Bielinski Decl. &

9   Exs. 1, 20, 21, 23, 24, 25.)

10         Plaintiff alleges that "on January 22, 2014, the impediments to Defendant's pending

11   applications with the USPTO were eradicated" when TTAB oppositions to Defendant's

12   applications for twenty-six B-formative marks were dismissed by stipulation. (*Id*. at 12; *see*

13   *also* Bielinski Decl. & Exs. 2-4.)

14   **II.**   **LEGAL STANDARD**

15         Preliminary injunctions and temporary restraining orders are governed by Rule 65 of the

16   Federal Rules of Civil Procedure, which provides that a "court may issue a preliminary

17   injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

18         "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

19   on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

20   that the balance of equities tips in his favor, and that an injunction is in the public interest."

21   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Injunctive relief is "an

22   extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

23   entitled to such relief." *Id*. at 22.  "[C]ourts must balance the competing claims of injury and

24   must consider the effect on each party of the granting or withholding of the requested relief."

25   *Id*. at 24 (internal quotation marks omitted).

The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Id*.

## III.  **DISCUSSION**

As discussed below, the Court cannot grant Plaintiff's requested injunction.

The problem here is in the breadth of Plaintiff's request.  To the extent that Plaintiff insists on a blanket injunction covering all B-formative marks, which goes beyond Plaintiff's registered trademarks, the Court cannot find in Plaintiff's favor. Even as to Plaintiff's registered marks, for which Plaintiff's claims are stronger, the Court does not find that Plaintiff has shown its entitlement to an injunction.

First, as to the two registered marks belonging to Plaintiff which Defendant has used, Defendant alleges that it stopped using the QUENCH Mark as of April 2012, and that it has not used the B RELAXED Mark "since last year." (Weinstein Decl., 5:¶¶13-14, Ex. 1 to Response, ECF No. 35-1.)  However, Defendant cannot dispute that it used these marks even after receiving notice of Plaintiff's registrations.  Accordingly, these two marks could properly be

the subject of a narrowly-tailored injunction, but Plaintiff has failed to show a likelihood of irreparable harm that would result if the requested injunction is denied.

Second, Defendant argues that Plaintiff cannot show entitlement to an injunction as to all B-formative marks, and the Court agrees that Plaintiff cannot meet its burden as to such a request. The Court likewise cannot find in favor of Plaintiff's arguments to enjoin future trademark applications for B-formative marks by Defendant.

Also, Defendant has shown that the harm to itself from a broad injunction would equal or, more likely, outweigh the harm to Plaintiff should Plaintiff's requested injunction be denied. Defendant argues persuasively that a preliminary injunction as broad as that requested by Plaintiff "would require [Defendant] to alter its entire identity and branding scheme . . . including all of its marketing and promotional materials . . . which [are] based upon the 'B' branding concept." (Def.'s Sur-Reply, 17:6-9, ECF No. 50.)  Defendant argues that its "B-formative marks are far more important to [Defendant] than the handful of B-formative marks are to [Plaintiff], which is primarily marketed as 'Boyd,' not as 'B.'" (*Id.* at 17:10-11.)

The Court finds that Defendant's arguments as to Plaintiff's identity as "Boyd" are well taken.  The submissions proffered to the Court by the parties support Defendant's argument that Defendant's marketing identity is more correlated with B-formative marks than that of Plaintiff. This finding does not affect the Court's analysis as to Plaintiff's likelihood of success on the merits, but supports a conclusion that the balance of equities is not tipped in Plaintiff's favor.

Even in Defendant's home state of Florida, the parties' exhibits and declarations show that Florida consumers likely associate Plaintiff with "Boyd Gaming" as much as with any B-formative mark.  In the Declaration of Brian Shultz, Plaintiff's Vice President of Marketing, Plaintiff presents evidence that over twenty-five thousand Florida residents visited Plaintiff's properties between 2008 and 2010. (Shultz Decl., 2:¶4 & Ex. 2, ECF No. 46.)  Also, Shultz states that Plaintiff "owned a gaming property in Florida named Dania Jai alai" from

1   "approximately 2006-2013," and as a result, "Florida consumers are familiar with Boyd and its

2   services." (*Id*. at 2:¶5.)  Furthermore, Shultz states that Plaintiff "is currently in contract with a

3   company called Sunrise Sports Entertainment for the development of a new property in Florida,

4   where it will offer hotel and casino services." (*Id*. at 2:¶6.)  Shultz continues to explain that

5   "[i]n anticipation of the new Florida project, Boyd has been in advertising Florida Panthers

6   game-day publications, which feature the B CONNECTED mark." (*Id*. at 2:¶7.)  Plaintiff

7   provides a copy of the full-page advertisement bearing B CONNECTED that ran in the Florida

8   Panthers game-day publication in October, November, and December 2013. (Shultz Decl., Ex.

9   3.)  In this advertisement, the most prominent identification of Plaintiff is "Boyd Gaming," and

10  the mark "B CONNECTED" is in small print at the bottom of the page. (*See id.*)

11      The examples of marketing and advertising submitted in the remainder of the parties'

12  exhibits provide additional support for the Court's conclusion that the balance of hardships

13  weighs in Defendant's favor.  For these reasons, the Court finds that the motion for preliminary

14  injunction must be denied.

15  **IV.    CONCLUSION**

16      **IT IS HEREBY ORDERED** that the Motion for Preliminary Injunction (ECF No. 27)

17  is **DENIED.**

18      **DATED** this 9th day of July, 2014.

19      _____

20      Gloria M. Navarro, Chief Judge
        United States District Court

21

22

23

24

25